**FILED**
**JUN 2 6 2013**
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | | |
|---|---|---|
| JEFFREY BETONE, | * | CIV 12-3018-RAL |
| | * | |
| Petitioner, | * | |
| | * | OPINION AND ORDER |
| vs. | * | DENYING IN PART MOTION |
| | * | UNDER 28 U.S.C. § 2255 AND |
| UNITED STATES OF AMERICA, | * | ORDERING AN EVIDENTIARY |
| | * | HEARING |
| Respondent. | * | |

## I. INTRODUCTION

Petitioner Jeffrey Betone was convicted of two counts of sexual abuse in violation of 18 U.S.C. § 2242 in this Court. Betone has filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. Doc. 1. Betone also filed a Supplemental Motion to Vacate, Set Aside or Correct Sentence, which provided additional information on Betone's claims, Doc. 4, and a Memorandum of Law, Doc. 9. The Government filed a response, Doc. 19, and Betone filed a reply, Doc. 20. For the reasons set out below, the § 2255 motion is denied in part, counsel is appointed for Betone, and an evidentiary hearing is ordered.

## II. FACTS

Betone was indicted on February 11, 2009, on three counts of sexual abuse in violation of 18 U.S.C. §§ 1153, 2242(1)-(2), and 2246(2)(A)-(2)(B). United States v. Betone, CR 09-30011-RAL, Doc. 1. Count I charged Betone with sexual abuse by oral copulation of Tate Jensen on the night of March 9, 2005, while Jensen was passed out and had not provided consent. Counts II and III charged Betone with sexual abuse through oral copulation and anal-

penile penetration of Valance Blue Arm on May 5, 2008, while Blue Arm, who is a low-functioning individual, was threatened and placed in fear.

Betone testified at trial that he had engaged in consensual sex acts with both victims on the nights in question. Both Blue Arm and Jensen testified at trial that the sexual acts were not consensual. During the sexual assault of Blue Arm, only Betone and Blue Arm were present. No other eyewitnesses testified about the assault of Blue Arm. Sherry Turning Heart testified that she was an eyewitness to part of the sexual assault of Jensen. Turning Heart testified that she walked into the room and witnessed the end of the sexual assault and the ensuing scuffle between Betone and Jensen once Jensen awoke from being passed out. The Government also presented other evidence, including Betone's statement of FBI Agent Oscar Ramirez and medical records. At trial, the jury convicted Betone of two counts of sexual abuse: Count 1, sexual abuse of Jensen on March 9, 2005, when Jensen was incapable of appraising the nature of the conduct and was physically incapable of declining participation in and communicating unwillingness to engage in a sexual act; and, Count 2, sexual abuse in the form of oral copulation of Blue Arm by threat and placing Blue Arm in fear.

Edward Albright was the attorney initially assigned to represent Betone when the Federal Public Defender was appointed as counsel on February 17, 2009. Doc. 19-1 at ¶ 1. Jana Miner, the Senior Litigator of the Federal Public Defender's Office for North and South Dakota, filed a Notice of Appearance and became primary counsel for Betone on May 12, 2009. Doc. 19-1 at ¶ 1. Miner represented Betone through trial and until shortly before sentencing when this Court granted a Motion to Withdraw on August 16, 2010. Doc. 19-1 at ¶ 1. Jamie Damon, a

Criminal Justice Act panel attorney outside of the Federal Public Defenders office, represented Betone at sentencing and on appeal.

Betone was sentenced to 151 months custody and 5 years supervised release on each count to run concurrently. Betone, CR 09-30011-RAL, Doc. 120. Betone appealed his conviction to the United States Court of Appeals for the Eighth Circuit, and the Eighth Circuit affirmed his conviction and sentence in a written opinion. United States v. Betone, 636 F.3d 384 (8th Cir. 2011). Betone currently is incarcerated at the Federal Correctional Institute in Seagoville, Texas, and now seeks relief from his conviction and sentence under 28 U.S.C. § 2255. Doc. 1.

## III. DISCUSSION

Betone seeks relief on three grounds: (1) ineffective assistance of counsel; (2) failure of the prosecutor to disclose exculpatory evidence; and (3) newly discovered evidence. Doc. 1 at 4-7.

### A. Timeliness of the § 2255 Motion

Under 28 U.S.C. § 2255, a prisoner in federal custody is subject to a one-year statute of limitations in applying for relief. 28 U.S.C. § 2255(f). Betone did not seek review from the Supreme Court of the United States following his direct appeal to the Eighth Circuit. Doc. 1 at 2. Therefore, his conviction became final 90 days after the Eighth Circuit entered its judgment. United States v. Hernandez, 436 F.3d 851, 856 (8th Cir. 2006). The mandate issued by the Eighth Circuit affirming Betone's conviction was filed on June 15, 2011. Betone, CR 09-30011-RAL, Doc. 136. The § 2255 motion was filed on June 8, 2012, within the one-year

statute of limitations. Doc. 1. Betone's § 2255 motion was timely filed in accordance with 28 U.S.C. § 2255(f).

### B. Ineffective Assistance of Counsel

Betone seeks relief based on a claim of ineffective assistance of counsel. The Sixth Amendment to the United States Constitution guarantees the right to effective assistance of counsel in criminal prosecutions. U.S. Const. Amend. VI; see also Powell v. Alabama, 287 U.S. 45 (1932); Johnson v. Zerbst, 304 U.S. 458 (1938); Gideon v. Wainwright, 372 U.S. 335 (1963). Betone identifies multiple areas where he believes trial counsel was ineffective. For the reasons explained, none of Betone's ineffective assistance of counsel claims have any validity. Betone received effective and competent counsel and was not prejudiced by counsel, either at trial or on appeal, and is not entitled to an evidentiary hearing on the issue of whether counsel was effective. See Winters v. United States, No. 12-1992, 2013 WL 2927208, at *4-8 (8th Cir. June 17, 2013) (examining thirty-six claims of ineffective assistance of pretrial, trial, and appellate counsel and finding that none warranted an evidentiary hearing).

A defendant who claims to have been deprived of effective assistance of counsel must show: (1) that his lawyer's representation fell below an objective standard of reasonableness; and (2) that the lawyer's deficient performance prejudiced the defendant. Strickland v. Washington, 466 U.S. 668, 688, 694 (1984); Nupdal v. United States, 666 F.3d 1074, 1075 (8th Cir. 2012) (citing Barger v. United States, 204 F.3d 1180, 1182 (8th Cir. 2000)). For the first requirement of the Strickland test, "the court must apply an objective standard and 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance,' Strickland, 466 U.S. at 690, while at the same time

refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions." Nave v. Delo, 62 F.3d 1024, 1035 (8th Cir. 1995). To establish the prejudice of the second prong of the Strickland test, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Because hindsight analysis is problematical, courts "indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance." United States v. Staples, 410 F.3d 484, 488 (8th Cir. 2005); Hunter v. Bowersox, 172 F.3d 1016, 1024 (8th Cir. 1999). Decisions involving trial strategy are therefore "virtually unchallengeable." Link v. Luebbers, 469 F.3d 1197, 1204 (8th Cir. 2006). "The Sixth Amendment right to counsel guarantees a fair trial, not a perfect one." Willis v. United States, 87 F.3d 1004, 1008 (8th Cir. 1996).

Betone's first argument is that trial counsel was ineffective for failing to investigate the background of Valance Blue Arm's sister, Camilla Collins. Betone argues that trial counsel could have obtained evidence that would have undermined the credibility of Collins by raising issues about her history of incarceration and psychiatric treatments. Doc. 4 at 14. The Government called Collins as a witness during their case-in-chief to testify about Blue Arms' life and level of functioning. Betone, CR 09-30011-RAL, Doc. 101-1 at 342. Defense counsel did not cross-examine Collins about any history of incarceration, but such information about Collins may not have been admissible as impeachment testimony under Federal Rule of Evidence 609. Nevertheless, this Court will allow Betone to present testimony about Collins' criminal record. Defense counsel also did not cross-examine Collins about her history of psychiatric treatments, but the Federal Rules of Evidence do not provide any mechanism by which a witness can be

impeached merely by having a history of psychiatric treatments. Betone almost certainly cannot satisfy either prong of the Strickland test with regard to his trial counsel's handling of Collins' testimony. 466 U.S. at 688. Betone's trial counsel objected during Collins's direct testimony, engaged in proper cross-examination of Collins, and was able to impeach her testimony in other ways. Trial counsel's failure to further impeach Collins in a way violative of the Federal Rules of Evidence did not prejudice Betone. Yet, Betone will be permitted to present evidence to this Court about Collins' past criminal record during an evidentiary hearing.

Betone next argues that trial counsel was ineffective for failing to question and subpoena for trial Katie Dupris, an alleged eyewitness to Betone's interaction with Tate Jensen and Sherry Turning Heart. Doc. 4 at 14. According to Betone, Dupris at some point saw individuals standing in a field, but was absolutely unaware of what occurred. Doc. 4 at 14. It is Betone's contention that testimony from Dupris could have provided a different timeline to the assault on Tate Jensen. Doc. 4 at 14. Dupris did not testify at trial. See Betone, CR 09-30011-RAL, Doc. 101. Betone contends that had Dupris testified, she would have testified to witnessing Jensen and Turning Heart assaulting Betone on the night Betone sexually assaulted Jensen. Doc. 20 at 2. The evidence was undisputed that Jensen punched Betone in the face after Betone had begun fellatio on Jensen. Both Jensen and Betone testified to that. Any testimony from Dupris on that subject would have been cumulative. Betone testified that he engaged in consensual sexual contact with Jensen, Betone, CR 09-30011-RAL, Doc. 101-2 at 36-40, and has not explained how a witness from outside the home that was "totally unaware of what was happening" that evening could provide exculpatory evidence relevant to whether the sexual act was consensual. Trial counsel elected to not call Dupris to the witness stand. Decisions of trial counsel about

whether to call a witness are included in the ambit of trial strategy. Staples, 410 F.3d at 488. Because decisions involving trial strategy are "virtually unchallengeable," Link, 469 F.3d at 1204, this Court cannot conclude that trial counsel was objectively unreasonable in not calling Dupris as a witness. In fact, it appears unlikely that any testimony by Dupris would have been relevant to the case as she was across a field and unaware of what was happening, according to Betone. Additionally, there is no prejudice to Betone that Dupris was not called to testify because she was not aware of what had happened inside the home where Betone's sexual encounter with Jensen occurred.

Betone then argues that trial counsel and appellate counsel were ineffective because each waived the defense of lack of jurisdiction. Betone contends that federal criminal jurisdiction in Indian country is "an open question." Doc. 4 at 14. This is not true. The Major Crimes Act, 18 U.S.C. § 1153, grants exclusive jurisdiction to the United States to prosecute Indians[1] for certain crimes occurring in Indian country. It is well-settled law that federal courts have criminal jurisdiction in Indian country. The Supreme Court of the United States upheld the

---

[1] As this Court noted in Federal Trade Commission v. Payday Financial, LLC, CIV 11-3017-RAL, 2013 WL 1309437, at *2 n.1 (D.S.D. March 28, 2013):

> The word "Indian" has acquired a legal meaning through the course of this nation's history. The origin of the word "Indian" dates back to the mistaken belief of early European explorers in North America that they had encountered people in the East Indies. While it is more appropriate in this era to refer to this nation's indigenous people as Native Americans or American Indians, this Opinion and Order uses the word "Indian" as that is the word used for two centuries in legal opinions to refer to the indigenous population of North America and has come to have a distinct legal meaning. See St. Cloud v. United States, 702 F.Supp. 1456, 1459-61 (D.S.D. 1988) (delineating meaning of "Indian" under laws of United States); see also United States v. Stymiest, 581 F.3d 759, 763-64 (8th Cir. 2009).

constitutionality of the Major Crimes Act in United States v. Kagama, 118 U.S. 375 (1886). The Court has continued to make clear that its decision in Kagama was not anomalous and that the Act is constitutional. See e.g., Negonsott v. Samuel, 507 U.S. 99, 103 (1993); Oliphant v. Suquamish Indian Tribe, 435 U.S. 191, 203-04 & n.14 (1978); Lone Wolf v. Hitchcock, 187 U.S. 553, 566-67 (1903); United States v. Thomas, 151 U.S. 577, 585 (1894). "Congress has undoubted constitutional power to prescribe a criminal code applicable in Indian country," and Betone is incorrect in asserting that there is an open question as to whether this Court has criminal jurisdiction. United States v. Antelope, 430 U.S. 641, 648 (1977). Because the question of jurisdiction is settled law, trial counsel and appellate counsel were not ineffective for failing to raise the issue. See Hamburg v. United States, 675 F.3d 1170, 1173 (8th Cir. 2012) ("If we do not require counsel to raise arguments that anticipate changes in the law or raise unsettled issues of law, then it cannot be considered professionally unreasonable for counsel to fail to object to the correct application of settled law within our circuit."). There is no merit to Betone's claim that his attorney was ineffective or deficient in waiving a defense of jurisdiction. The § 2255 motion on this issue is denied.

Betone next argues that this Court spoke directly to a potential juror during voir dire and announced, "Don't worry, we got enough evidence on him." Doc. 4 at 14. This Court did not make that statement and has carefully reviewed the voir dire transcript and has found no statement in any respect similar in nature. Betone, CR 09-30011-RAL, Doc. 125. Betone claims that counsel was ineffective for failing to object to the statement and for failing to raise the issue on appeal. Because no such statement was ever made, counsel could not have been ineffective for failing to object to and appeal the issue. However, because this Court is going to conduct an

evidentiary hearing and is mystified at how Betone came up with the notion that this Court made such a statement, this Court will hear any and all testimony and evidence Betone wishes to present concerning this allegation.

Betone next argues that he received ineffective assistance of counsel because trial counsel did not object to, and appellate counsel did not raise on appeal, this Court's refusal to excuse for cause a juror who identified prejudice against Betone's sexual orientation and asked to be excused. Doc. 4. at 14. One juror stated that her religious belief was that homosexuality was a sin rather than a sexual preference. Betone, CR 09-30011-RAL, Doc. 125 at 72. However, the juror confirmed that she would separate her religious beliefs and follow instructions on the law and further would not think Betone was a bad person for engaging in homosexual acts. Id. at 73. The juror was not dismissed for cause, but was also not selected to serve on the jury. Id. at 74. Trial counsel and appellate counsel were not ineffective in failing to object to this juror not being excluded for cause. See United States v. Nelson, 347 F.3d 701, 711 (8th Cir. 2003) (finding a juror impartial when "a juror sw[ore] that he could set aside any opinion he might hold and decide the case on the evidence"); United States v. Allee, 299 F.3d 996, 1001 (8th Cir. 2002) (concluding that jury was impartial and fair where jurors asserted that they would decide the case only on the evidence presented). She made clear that despite her personal religious beliefs, she would hear the evidence and decide the case based on the evidence and instructions of law. In addition, there is no prejudice under the second prong of Strickland because the juror ultimately was not selected, and Betone has no argument that somehow the makeup of the twelve person jury would have been different if the juror at issue had been excused for cause. 466 U.S. at 694.

Betone next has a laundry list of actions that trial counsel failed to do:

> (1) subpoena Medical records of evidence of physical/aggravated assault committed on petitioner from Eagle Butte Indian Health Service and Rapid City Medical Center; (2) obtain weather temperature information; (3) cross-examine the complainants concerning the theft of petitioner's car keys, wallet, vehicle, shoes, and jacket; (4) obtain information concerning the physical assault from Cheyenne River Sioux Tribe Police Department Records and from Officer Justin Webb; (5) and (a) subpoena petitioner's bank records and (b) witnesses to sexual assault committed on movant by Tate Jensen when he was in a comatose alcohol induced state in Sherri [sic] Turning Heart's Apartment on March 9, 2005.

Doc. 4 at 14. These alleged deficiencies make no difference to Betone's case or conviction. Again, it was undisputed that Jensen punched Betone in the face causing injury to Betone on the night Betone performed fellatio on Jensen and that Betone left the Turning Heart apartment barefoot, injured, and without keys. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. Betone has not met the benchmark of showing that the trial cannot be relied upon as having produced a just result in large part because he has failed to demonstrate why any of this evidence is relevant; in fact, it appears that much of this evidence reinforced information already in evidence, would have been cumulative, or would have been inadmissible at trial. The only identifiable relevant information listed is (5)(b), which asserts that trial counsel did not call witnesses to the sexual assault involving Tate Jensen. In fact, Betone does not identify any other eye witnesses; all witnesses to that sexual assault testified during the trial and, as covered above, Katie Dupris was not an eyewitness and had nothing new to add to the evidence. Even without

further explanation of these claims, the record is clear that there is no prejudice under the second prong of Strickland for trial counsel's decision to not pursue any of these avenues. 466 U.S. at 688.

Finally, Betone alleges that the previously-listed failures of trial counsel "may have resulted from a conflict of interest as a result of counsel's personal relationship with Tate Jensen and Jensen's family." Doc. 4 at 14. Betone's primary argument that trial counsel had a conflict of interest is his assertion that trial counsel did not impeach Tate Jensen during his testimony and did not pursue alibi witnesses. Doc. 9 at 5, 7. "In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 348 (1980). "[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief. But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." Id. at 349-50 (internal citations omitted); see also Covey v. United States, 377 F.3d 903, 906-07 (8th Cir. 2004). "An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." Mickens v. Taylor, 535 U.S. 162, 172 n.5 (2002). "Adverse effect" is not the equivalent of prejudice. Covey, 377 F.3d at 908. To demonstrate adverse effect, a defendant must identify "some actual and demonstrable adverse effect on the case, not merely an abstract or theoretical one." United States v. Flynn, 87 F.3d 996, 1001 (8th Cir. 1996). The "effect on representation" means that the conflict caused the attorney's decision, not that the decision was prejudicial to the defendant in any other way. Covey, 377 F.3d at 908.

Betone is unable to establish that his trial counsel had an actual conflict of interest. Betone did not raise an objection to counsel at trial, and therefore must demonstrate that "an actual conflict of interest adversely affected his lawyer's performance." Sullivan, 446 U.S. at 348. Miner submitted an affidavit to this Court in regard to her relationship with Tate Jensen and his family. Doc. 19-1. Miner does not have, and has never had, a personal relationship with the Jensen family. Miner disclosed to Betone that she knew of the Jensen family because she had previously represented a woman who pleaded guilty to killing Tate Jensen's brother. Miner had also represented a cousin of Tate Jensen; that cousin believes that Miner did not provide adequate representation. Doc. 19-1 at ¶ 3. While Miner has represented a member of the Jensen family and an individual whose victim was a member of the Jensen family, her representation of those individuals does not create a conflict of interest. Betone has been unable to show an "actual conflict of interest" because there is no evidence that Miner had any personal relationship with the Jensen family. In addition, Betone has not identified the adverse effect of Miner's prior representation of those connected to Jensen. Betone must identify an "actual and demonstrable adverse effect on the case" but has failed to do so. Flynn, 87 F.3d at 1001. Miner vigorously and properly cross-examined Tate Jensen in a way that buttressed Betone's theory of the case that Jensen had consented to the sexual act and then became embarrassed and overreacted when the sexual act was interrupted. See Betone, CR 09-30011-RAL, Doc. 101 at 54-68.

Betone also argues that Miner's conflict of interest led to her failure to investigate and interview an alibi witness. Doc. 9 at 7. Betone testified at trial that sexual interactions with Valance Blue Arm and Tate Jensen were consensual, which Betone had told Miner before trial. Doc. 19-1 at ¶ 5. Because Betone has consistently stated that he was present and engaged in

12

consensual sex with Blue Arm and Jensen, the lack of an alibi witness at trial could not have been prejudicial. Nothing indicates that a conflict of interest kept Miner from seeking out an alibi witness, nor has Betone identified an alibi witness. In fact, Miner is not aware of any alibi witness ever identified by Betone. The decision whether to put an alibi witness on the stand is an issue of trial strategy that this Court cannot conclude was unreasonable. See Staples, 410 F.3d at 488. Betone has not shown ineffective assistance of counsel and has not shown any prejudice related to any claimed conflict of interest or lack of pursuit of alibi testimony.

### C. Failure of Prosecutor to Disclose Exculpatory Evidence

Betone explains his next ground for relief as such:

> Movant has learned, subsequent to trial, that the Federal Prosecutor Hanson was given information by DeeAnn Lebeau-West two weeks before the trial that her sister ([Sherry] Turning Heart) fabricated the whole story. Yet, Hanson called her just another drunken Indian that no one will believe anyway, and failed to disclose that information to defense counsel.

Doc. 4 at 16. "As a general rule, '[p]rosecutorial misconduct does not warrant federal habeas relief unless the misconduct infected the trial with enough unfairness to render [petitioner's] conviction a denial of due process.'" Louisell v. Dir. of Iowa Dep't of Corr., 178 F.3d 1019, 1023 (8th Cir. 1999) (quoting Roberts v. Bowersox, 137 F.3d 1062, 1066 (8th Cir. 1998)). To violate due process, a prosecutor's conduct must be so egregious as to render a defendant's trial fundamentally unfair. Stringer v. Hedgepeth, 280 F.3d 826, 829 (8th Cir. 2002). To receive habeas relief, a petitioner "'must show that there is a reasonable probability that the error complained of affected the outcome of the trial—i.e., that absent the alleged impropriety the

13

verdict probably would have been different.'" Id. (quoting Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995)).

A different standard applies when a petitioner seeks a new trial when a prosecutor obtained a conviction with the knowing use of perjured testimony. United States v. Duke, 50 F.3d 571, 577 (8th Cir. 1995); see also Kirkpatrick v. Whitley, 992 F.2d 491, 497 (5th Cir. 1993) (characterizing the "knowing use of perjury" standard as "considerably less onerous"). The Supreme Court has held that a conviction obtained through the knowing use of perjured testimony "must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Agurs, 427 U.S. 97, 103 (1976). The test used is a "materiality standard," meaning "the fact that the testimony is perjured is considered material unless failure to disclose it would be harmless beyond a reasonable doubt." United States v. Bagley, 473 U.S. 667, 680 (1985).

Prosecutor Mikal Hanson represented the Government in Betone's trial and continues to represent the Government in this matter. Betone's argument is that Sherry Turning Heart, who testified for the Government about the events surrounding the assault on Tate Jensen, falsified her testimony, and that the prosecutor became aware of the false testimony two weeks before trial from DeeAnn Lebeau-West, Turning Heart's sister. See Betone, CR 09-30011-RAL, Doc. 101 at 136; Doc. 4 at 16. The assault on Tate Jensen took place in Turning Heart's home and, according to her testimony at trial, she was an eyewitness to part of the sexual assault. Because the only other eyewitness testimony about the sexual assault on Jensen was from Jensen and Betone, Turning Heart's testimony was important to the Government's case. If Hanson knew that Turning Heart was perjuring herself on the stand, it would have been improper for Hanson to

14

introduce such testimony and Hanson would have been required to provide such information to the defense under Brady v. Maryland, 373 U.S. 83 (1963). If Hanson did knowingly convict Betone using the perjured testimony of Turning Heart, the conviction on Count I must be set aside if there is a reasonable likelihood that the perjured testimony by Turning Heart affected the jury's judgment. Agurs, 427 U.S. at 103. Because Turning Heart was the only eyewitness to the assault on Jensen, other than Betone and Jensen, her testimony was important to the Government's case and there is a reasonable likelihood that, depending on what parts of her testimony were allegedly perjured, her perjured testimony affected the jury's judgment. This Court cannot determine that it was "harmless beyond a reasonable doubt" for Hanson to fail to disclose the fact of perjury, if, in fact, the testimony was perjured and Hanson knew so two weeks before the trial date. See Bagley, 473 U.S. at 680. An evidentiary hearing is needed to determine the validity of Betone's claims.

Betone also argues that Hanson's alleged statement impugning the witness amounts to prosecutorial misconduct. However, even if Betone were able to present evidence that Hanson made such a statement in private, he cannot show any probability that the outcome of the trial would have been different. See Stringer, 280 F.3d at 829. Therefore, Betone's claim of prosecutorial misconduct based on Hanson's alleged statement does not rise to a level that would allow this Court to grant Betone relief.

### D. Newly Discovered Evidence

Betone's third ground for relief is the discovery of new evidence. "Motions for new trial based on newly discovered evidence are disfavored." United States v. Jones, 34 F.3d 596, 600 (8th Cir. 1994). In general, a new trial will be granted only if (1) the evidence was discovered

after trial; (2) the failure to discover this evidence was not attributable to a lack of due diligence on petitioner's part; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is likely to produce an acquittal if a new trial is granted. United States v. Huggans, 650 F.3d 1210, 1225 (8th Cir. 2011); see also United States v. Dogskin, 265 F.3d 682, 685 (8th Cir. 2001).

Betone identifies two pieces of allegedly newly discovered evidence. The first is that Larry LeBeau helped Sherry Turning Heart perjure her testimony and statements. Doc. 4 at 15. Betone bases this claim on unidentified evidence that Turning Heart was not home on the night that Tate Jensen was assaulted in Turning Heart's home. Doc. 4 at 15. Betone claims that there is "new evidence" to show that she was not present, but only identifies that no Cheyenne River Sioux Tribe Law Enforcement records show an arrest of Turning Heart or her boyfriend on that evening. Doc. 4 at 15. The lack of arrest records is not material evidence. See Huggans, 650 F.3d at 1225. To the extent that this argument is the same as Betone's argument that the prosecutor knew that Turning Heart was offering perjured testimony at trial, Betone may present testimony at an evidentiary hearing on this claim. However, outside of the alleged knowing offering of perjured testimony, this alleged new evidence does not provide a reason for this Court to grant relief under § 2255. The evidence of Turning Heart's boyfriend's arrest record is not material and is not likely to produce an acquittal if a new trial is granted. See id.

Betone's second argument is that Jensen's statement that he was assaulted at 5:00 a.m., is undermined by evidence that Jensen was seen at Indian Health Services at 3:50 a.m. Doc. 4 at 15. Betone has not provided any indication that this evidence was not available before trial, it is unclear whether this is truly newly discovered evidence, and indeed it is unclear if such

16

records even exist. This Court will allow Betone to present evidence at the evidentiary hearing on this subject. However, a discrepancy in what time the sexual assault occurred of an hour or two in the wee hours of the morning in a case where the issue was whether the sexual encounter was consensual is not material and is not likely to produce an acquittal if a new trial is granted. See Huggans, 650 F.3d at 1225.

Finally, Betone claims that counsel at sentencing was unaware of the facts of the case and failed to bring the extenuating facts discussed here to the attention of this Court. Doc. 4 at 15. This appears to be an ineffective assistance of counsel claim. To show ineffective assistance of counsel at the sentencing phase, a defendant must establish both prongs of the Strickland test by showing that (1) his lawyer's representation fell below an objective standard of reasonableness; and (2) the lawyer's deficient performance prejudiced the defendant. See Champion v. United States, 319 Fed. App'x. 443, 445 (8th Cir. 2009); Strickland, 466 U.S. at 688. The newly discovered evidence asserted by Betone is not the type of evidence that would have made a difference at sentencing. Counsel at sentencing did not fall below an objective standard of reasonableness in failing to further discuss the testimony of Turning Heart or to discuss a potential discrepancy in the time line of the assault. There was no prejudice to Betone for counsel's failure to argue these points at sentencing. Betone is unable to prove either prong of Strickland and is not entitled to relief based on the ineffective assistance of counsel claim at sentencing.

### E. Request for Hearing

Betone has requested an evidentiary hearing. A prisoner is entitled to an evidentiary hearing on a § 2255 motion unless the motion, files, and records of the case conclusively show

that the prisoner is not entitled to relief. 28 U.S.C. § 2255; see also Engelen v. United States, 68 F.3d 238, 240-41 (8th Cir. 1995); Voytik v. United States, 778 F.2d 1306, 1308 (8th Cir. 1985). Accordingly, a petition can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact. Engelen, 68 F.3d at 240; see also Holloway v. United States, 960 F.2d 1348, 1358 (8th Cir. 1992) (holding that a single, self-serving, self-contradicting statement is insufficient to render the motion, files and records of a case inconclusive); Larson v. United States, 905 F.2d 218, 220-21 (8th Cir. 1990) (refusing to require an evidentiary hearing if the facts alleged, taken as true, would not justify relief); Smith v. United States, 618 F.2d 507, 510 (8th Cir. 1980) (noting that a mere statement of unsupported conclusions will not suffice to command a hearing); cf. United States v. Unger, 665 F.2d 251 (8th Cir. 1981) (evidentiary hearing required where allegations are sufficiently specific and neither conclusory nor incredible in the face of the record).

Most of Betone's allegations, even if accepted as true, would not entitle Betone to relief. Therefore, under the first prong of Engelen, this Court need not conduct an evidentiary hearing on Betone's claims for relief based on the bulk of the claims of ineffective assistance of counsel, newly discovered evidence, and prosecutorial misconduct based on the prosecutor's alleged comments toward a witness. See 68 F.3d at 240; Winters, 2013 WL 2927208, at *4-8. However, Congress directs District Courts to hold an evidentiary hearing if a petitioner's claim shows he may be entitled to relief. 28 U.S.C. § 2255; Lindhorst v. United States, 585 F.2d 361, 365 (8th Cir. 1978). Betone's claim that the prosecutor withheld information from defense

counsel that an eyewitness to the assault on Jensen was going to perjure her testimony may entitle Betone to relief if that allegation is accurate. While the prosecutor's brief denies prosecutorial misconduct, a court cannot rely on mere statements by the Government, but must hold an evidentiary hearing to determine whether the Government knowingly used perjured material testimony. Id. Betone will also be permitted to present evidence on the assertions that Jensen's medical records from the day of the assault matter, that Collins' criminal record was admissible to impeach her, and that this Court supposedly said something inappropriate to a juror and from where that notion comes.

## IV. CONCLUSION

To the extent that Betone seeks § 2255 relief based on the claims of ineffective assistance of counsel, newly discovered evidence, and prosecutorial misconduct based on the statements about the witness, his motion is denied and the petition is dismissed. The motion, files, and records of the case conclusively show that Betone is not entitled to relief on those grounds. To the extent that Betone seeks § 2255 relief based on certain ineffective assistance of counsel claims regarding lack of use of Jensen's medical records and Collins' criminal history, and based on prosecutorial misconduct based on knowingly providing perjured testimony to the jury, an evidentiary hearing is granted pursuant to § 2255(b). Therefore, it is hereby

ORDERED that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, Doc. 1, is denied except with regard to Ground Two, Failure of Prosecutor to Disclose Exculpatory Evidence. It is further

ORDERED that Petitioner's Supplemental Motion to Vacate, Set Aside, or Correct Sentence, Doc. 4, is denied except with regard to Ground Two, Failure of Prosecutor to Disclose Exculpatory Evidence. It is further

ORDERED that an evidentiary hearing will be held regarding Ground Two, Failure of Prosecutor to Disclose Exculpatory Evidence once this Court appoints counsel for Betone.

Dated June 26th, 2013.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE